IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MAACO ENTERPRISES, INC.** | : | **CIVIL ACTION NO.: 02-3751** |
| 381 Brooks Road | : | |
| King of Prussia, PA 19406 | : | |
| | : | |
| vs. | : | **JURY TRIAL NOT DEMANDED** |
| | : | |
| | : | |
| **CASEY J. FULLER &** | : | |
| **V&F ENTERPRISES, INC.** | : | |
| 2429 Fifth Avenue South | : | |
| Birmingham, AL 35233 | : | |

## FIRST AMENDED COMPLAINT

1. Plaintiff Maaco Enterprises, Inc. ("Maaco") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 381 Brooks Road, King of Prussia, Pennsylvania, 19406.

2. Defendant Casey J. Fuller ("Fuller") is a resident and citizen of the State of Alabama.

3. Defendant V&F Enterprises, Inc. ("V&F") is a corporation organized and existing under the laws of the State of South Dakota and is owned and controlled by Fuller, Dwight D. Vondra and Mary C. Vondra. Fuller and V&F are sometimes referred to as "defendants."

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because Maaco and defendants are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a) in that a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this judicial district.

6. Jurisdiction and venue are also proper in this judicial district pursuant to the mandatory forum and venue selection clause contained at Paragraph 24.B of the Franchise Agreement entered into between defendants and Maaco, which is the subject of this dispute. A copy of the Franchise Agreement is attached as Exhibit "A".

7. Maaco is engaged in the business of franchising Maaco Auto Painting and Bodyworks Centers which specialize in automobile painting and body repair and other automotive products and services.

8. Maaco franchisees are licensed to use the trade names, service marks and trademarks of Maaco and to operate under the Maaco business system, utilizing specially designed buildings with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and information. The relationship between Maaco and its franchisees is governed by the terms and conditions of the Franchise Agreement entered into between Maaco and each franchisee.

9. Maaco owns the mark and related logo "Maaco Auto Painting and Bodyworks" which is registered with the United States Patent and Trademark Office - No. 1,050,442. Maaco and its franchisees have continuously used and advertised Maaco's trademarks throughout the United States. Maaco's trademarks distinguish its franchises from similar businesses and are widely known and recognized by consumers.

10. On August 24, 1998, Maaco and Fuller entered into a Maaco Auto Painting & Bodyworks Franchise Agreement (the "Franchise Agreement"), under which Fuller was granted the right and undertook the obligation to operate a Maaco Auto Painting and Bodyworks Center at 2429 Fifth Avenue South, Birmingham, Alabama (the "Center").

11. On March 21, 2000, Maaco, Fuller and V&F entered into an Assignment and Assumption Agreement (the "Assignment"). The Assignment was entered into by Maaco at Fuller's

request so that he could operate his Maaco Center through V&F. Under the Assignment, Fuller transferred his rights in the Franchise Agreement to V&F, and V&F assumed all of Fuller's obligations under the Franchise Agreement. Fuller, however, agreed to continue to be bound by the provisions of the Franchise Agreement and agreed to guarantee all of V&F's obligations under the Franchise Agreement. A copy of the Assignment is attached as Exhibit "B".

12. Under the terms of the Franchise Agreement, defendants were required, among other things: (a) to pay to Maaco a weekly royalty fee equal to a percentage of the gross receipts generated by the Center; (b) to submit weekly reports to Maaco of the gross receipts generated by the Center; and (c) to pay to Maaco an advertising contribution for use in an advertising fund, all as set forth more fully in the Franchise Agreement.

13. By virtue of the franchise relationship, defendants also agreed to pay Maaco for paint and supplies purchased from Maaco by defendants.

14. Under paragraph 24.E of the Franchise Agreement, defendants agreed that if Maaco instituted an action at law or in equity against defendants to enforce the terms of the Franchise Agreement, Maaco would be entitled to recover, in addition to any judgment, reasonable attorney's fees, court costs and litigation expenses.

15. On March 29, 2000, defendants executed a Demand Note and Security Agreement (the "Demand Note") in Maaco's favor in the amount of $30,742.28, representing past due royalties, advertising contributions and amounts due for paint and supplies. A copy of the Demand Note is attached as Exhibit "C."

16. After executing the Demand Note, defendants breached the Franchise Agreement by failing to pay Maaco royalty fees, advertising contributions and to pay for paint and supplies. Defendants also failed to pay amounts due under the Demand Note.

17. As a result of defendants' breach of the Franchise Agreement and failure to cure such breaches, Maaco terminated the Franchise Agreement.

18. In reliance on defendants' representations that they would cure their indebtedness and remain current in their Franchise Agreement obligations, Maaco subsequently agreed to conditionally reinstate the Franchise Agreement pursuant to a Conditional Reinstatement of Franchise Agreement executed on September 11, 2000.

19. On September 11, 2000, Maaco and defendants entered into an Allonge to the Demand Note (the "First Allonge") under which the principal amount due to Maaco was increased to $51,530.55, representing defendants' debt to Maaco. A copy of the First Allonge is attached as Exhibit "D."

20. Defendants failed to comply with their obligations under the Franchise Agreement as conditionally reinstated.

21. As a result of defendants' breach of the Franchise Agreement and failure to cure, Maaco again terminated the Franchise Agreement in April 2001.

22. After the Franchise Agreement was terminated, defendants again represented that they would submit all outstanding weekly business reports, cure their indebtedness, and remain current in their Franchise Agreement obligations. Without waiving any and expressly reserving all of its rights, Maaco again agreed to conditionally reinstate the Franchise Agreement according to its original terms, subject only to the terms of the Second Conditional Reinstatement. A copy of the Second Conditional Reinstatement of Franchise Agreement dated May 21, 2001 is attached as Exhibit "E".

23. On May 21, 2001, Maaco and defendants entered into a Second Allonge to the Demand Note (the "Second Allonge") under which the principal amount due to Maaco was increased to $63,005.14, representing defendants' debt to Maaco. A copy of the Second Allonge is attached as

Exhibit "F." The terms of the Demand Note were also amended to provide that defendants would make weekly payments to Maaco to repay the indebtedness until May 9, 2003. The Demand Note, First Allonge and Second Allonge are collectively referred to as the "Amended Demand Note." Failure to make timely payments under the Amended Demand Note or the Franchise Agreement constituted a default under the Amended Demand Note and the Franchise Agreement.

24. After executing the Second Conditional Reinstatement and the Amended Demand Note, defendants breached the Franchise Agreement by failing to pay royalty fees and advertising contributions when due and by failing to submit weekly reports in a timely manner.

25. On June 10, 2002, Maaco sent defendants a Notice of Default of Franchise Agreement/Notice of Default of Demand Note and Security Agreement/Demand for Payment (the "Default Notice"). In the Default Notice, Maaco advised defendants that they were in default under the Franchise Agreement and Amended Demand Note. Maaco further advised defendants that unless they cured their defaults within fifteen (15) days, Maaco would enforce its rights under the Franchise Agreement, including without limitation, termination of the Franchise Agreement. A copy of the Default Notice is attached as Exhibit "G."

26. After June 10, 2002, Maaco learned that on January 28, 2002, defendant Fuller had formed a new corporation, Avalon Holdings Corporation, and was operating the Center through this corporation without Maaco's knowledge or approval. Among other things, Fuller had opened a corporate bank account under the name Avalon Holdings Corporation at the address of the Center. Moreover, Fuller had submitted payments to Maaco for royalty and other fees using Avalon Holdings Corporation's checks.

27. Under the Franchise Agreement, a franchisee may not transfer any of its rights or obligations under the Franchise Agreement to a third party without Macco's express written permission.

28. Defendants' unauthorized transfer of their Franchise Agreement obligations to the new corporation was grounds for immediate termination of the Franchise Agreement.

29. On July 9, 2002, Maaco terminated the Franchise Agreement by sending defendants a Notice of Termination. The Notice of Termination advised defendants that the Franchise Agreement was terminated immediately for their unauthorized transfer of their Franchise Agreement obligations to Avalon Holdings, as well as their other defaults under the Franchise Agreement. The Notice of Termination further advised defendants that the termination of the Franchise Agreement became effective upon defendants' receipt of the Notice of Termination. A copy of the Notice of Termination is attached as Exhibit "H".

30. As of July 22, 2002, defendants have failed to pay Maaco $83,909.61 including (a) $12,018.08 in known royalty fees; (b) $15,882.00 for advertising expenditures; and (c) $1,288.89 for paint and supplies purchased; and (d) $54,720.64 in principal and interest due under the Amended Demand Note. Defendants have also failed to submit weekly business reports as required under the Franchise Agreement for the weeks ending June 14, 2002 through the date of this First Amended Complaint.

## COUNT I

### (Money Damages for Breach of Franchise Agreement)

31. Maaco incorporates the averments contained in the preceding paragraphs as if fully set forth in this paragraph.

32. Defendants have failed to pay to Maaco $29,188.97 plus all amounts due for weeks in which required reports were not submitted.

WHEREFORE, plaintiff Maaco Enterprises, Inc. demands judgment in its favor and against defendants Casey J. Fuller and V & F Enterprises, Inc., jointly and severally, in the amount of $29,188.97 plus all amounts due for weeks in which required reports were not submitted, together

with pre-judgment and post-judgment interest, costs, attorney's fees and such other relief as this Court deems appropriate.

## COUNT II

### (Money Damages for Breach of Amended Demand Note)

33. Maaco incorporates the averments contained in the preceding paragraphs as if fully set forth in this paragraph.

34. Despite Maaco's demand for payment, defendants have failed to pay to Maaco $54,720.64 in principal and interest due under the Amended Demand Note, as of August 28, 2002.

WHEREFORE, plaintiff Maaco Enterprises, Inc. demands judgment in its favor and against defendants Casey J. Fuller and V & F Enterprises, Inc., jointly and severally, in the amount of $54,720.64 together with interest, costs, attorney's fees and such other relief as this Court deems appropriate.

## COUNT III

### (For an Accounting)

35. Maaco incorporates the averments contained in the preceding paragraphs as if fully set forth in this paragraph.

36. Under the terms of the Franchise Agreement, defendants agreed to account to Maaco for gross receipts generated in the operation of the Center.

37. Defendants have failed to account to Maaco for gross receipts generated in the operation of the Center.

38. The amount of gross receipts generated in the operation of the Center, upon which royalty fees are calculated, is peculiarly in the knowledge of defendants, and Maaco requires an accounting of the amount of these gross receipts.

WHEREFORE, plaintiff Maaco Enterprises, Inc. demands judgment in its favor and against defendants Casey J. Fuller and V & F Enterprises, Inc., jointly and severally, for an accounting of the gross receipts of the Center for the weeks during which defendants failed to submit required reports to Maaco, and as a result of such accounting, be ordered to pay to Maaco the sums due it as a royalty fee on such gross receipts, together with pre-judgment and post-judgment interest, costs, attorney's fees and such further relief as this Court deems appropriate.

## COUNT IV

### (Loss of Future Royalty Payments)

39. Maaco incorporates the averments contained in the preceding paragraphs as if fully set forth in this paragraph.

40. By failing to pay amounts due under the Franchise Agreement as set forth above, defendants have committed a material breach of the Franchise Agreement.

41. As the result of such breach, Maaco terminated the Franchise Agreement by Notice of Termination dated July 9, 2002.

42. Under the terms of the Franchise Agreement, Maaco had anticipated receiving continuing revenue from defendants' royalty payments until August 24, 2013.

43. Defendants' breach of the Franchise Agreement has damaged Maaco in that Maaco no longer has the potential to receive future royalties and payments for the remaining unfulfilled term of the Franchise Agreement.

WHEREFORE, plaintiff Maaco Enterprises, Inc. demands judgment in its favor and against defendants Casey J. Fuller and V & F Enterprises, Inc., jointly and severally, in a sum to be determined at the time of trial (reduced to its present value), representing the value of royalty payments anticipated by Maaco under the Franchise Agreement for the term of the contract, together

with costs, attorney's fees, pre-judgment and post-judgment interest and such other relief as the Court deems appropriate.

**WIGGIN & DANA LLP**

By:_____
     Joseph Schumacher
     Kimberly S. Toomey
     Pa. ID Nos. 45726/75198
     1055 Westlakes Drive, 3rd Floor
     Berwyn, PA 19312
     (610) 727-4153

     Attorneys for Plaintiff
     MAACO Enterprises, Inc.

Dated: August 29, 2002

## CERTIFICATE OF SERVICE

  I, Kimberly Toomey, certify that I have this day served a true and correct copy of the below described pleading or motion upon defendants at the address listed below:

| | |
|---|---|
| Pleading or Motion served: | Plaintiff's First Amended Complaint |
| Defendants: | Casey J. Fuller & V &F Enterprises, Inc.<br>2429 Fifth Avenue South<br>Birmingham, Alabama |
| | Casey J. Fuller & V &F Enterprises, Inc.<br>636 Cahaba Forest Cove<br>Birmingham, AL 35242 |
| With a copy to: | James W. Gillis, Esquire<br>2301 Morris Avenue<br>Suite 104<br>Birmingham, Alabama 35203-4391 |
| Mode of Service: | Via first class mail |

_____
Kimberly Toomey

Date:  August 29, 2002